I'm Darrell Cordero. I represent the appellants, George DeMarco and James DeMarco. This case presents a rather simple question. When an insured is sued under California law for acts, errors, and omissions that are within company operations under policy coverage covering acts, errors, and omissions within company operations, may an insurer avoid a defense merely because the third-party claimant also alleges acts, errors, and omissions outside those operations. Under standard principles, bedrock principles of California law, going back to the simple decision of Gray v. Zurich, the answer is no. The presence of non-covered allegations does not defeat coverage or permit an insurer to avoid a defense when the third-party claimant makes allegations of covered operations or covered. Well, let me ask you this. If the allegations that you're talking about that would be covered, as it were, are only in there for the purpose of, with reference to, that are actually couched in terms of the purported misrepresentations on the stock purchase agreement, does that make a difference? I would answer that in two ways. First of all, to divine why they're in there requires a little bit of mind reading of the third-party claimant, because the allegation itself is not couched in terms of a misrepresentation. The allegations are those of facts, i.e., the alarm company engaged in aggressive billing practices. The alarm company engaged failed to conduct fire inspections. Then that is used later in couched in misrepresentation terms. But the third-party claimant is making allegations of covered events. And the reason that the third-party claimant does that is irrelevant. We know that in mixed concurrent cause situations, if only one of the concurrent causes is a covered act, that that does not destroy coverage. We saw that in this Court's decision in the Conestoga Services case just a few years ago, where the bankruptcy of the broker's client was a necessary condition for the third party to be injured. It did not matter because the third-party claimant was still making allegations of facts that would bring it within the potential coverage. So, but we're not disputing, you're not disputing, or we could say you're conceding, that if it were only allegations of a stock purchase agreement, if that was the whole lawsuit, that's not covered, right? If the allegations were solely acts of acts, errors, or omissions in connection with a stock sale, that would not be a covered event. But using the principles that we apply to decide whether a defense is owed under California law, a third-party claimant is not owed under California law. And so that's why an insurer in a court looks at the factual allegations that are made against the insurer. Well, what are the two proximate causes that you're asserting? The proximate cause number one is the underlying operational, alleged operational failure. For example, the company missed fire inspections on the DeMarcos watch. Right. But is greater alarm liable to Interface for your proximate cause number one? Isn't it just liable to its customers? The liability is being asserted by Interface against the DeMarcos, not against the company. And we don't look to the potential. We look at the allegations that the third party made. Doesn't that also further undermine your position, the fact that the suit is over representations made by DeMarco, not the underlying operations of the company? That almost prejudges the answer, because the suit alleges facts that involve operational allegations. It alleges it's misrepresentations about certain operations that affect the value of the purchase price for the stock that the DeMarcos were selling to Interface. If you look at it this way, if you say I'm alleging... It alleges a misrepresentation about an operational event. Because if you go through the whole thing, the damage from that is that the DeMarcos allegedly made a representation about those operations that affect the stock purchase price that Interface would be willing to pay, right? Correct. That is one of the allegations. Right. But the fact that you were not inspecting the alarms regularly or any of that, that doesn't – that isn't why they're suing you. They're suing you because you lied about whether you owed money or you had further expenses or liabilities for those kinds of actions. Not exactly, and let me explain why. Let us assume that the underlying fact is untrue, that is, of the allegation. That is, the company did conduct fire inspections. That – the proof of that fact would defeat the allegation that you misrepresented about those fire inspections. So the – for duty to defend purposes, since we look at the facts alleged by the third-party claimant, not the legal theories, but the facts, the third-party claimant is alleging facts that involve operations of the company and using those facts as an asserted basis of liability, such that the presence or absence of those facts would be dispositive of the claim asserted by Interface. That is, if it is demonstrated that the – But that's just evidence. That's evidentiary. That's not the underlying basis for liability. The – in the absence of the underlying conduct, there would be no basis of liability. I would suggest hypothetical, much like what the Supreme Court of California did in the all-state decision last March. In discussing its prior decision in Partridge, assume for sake of argument that there were two different actors, that, for example, the seller of the stock was not George DeMarco or James DeMarco, but some other stock seller to Interface. And the same allegations are made against DeMarco, that under your watch, the company failed to conduct fire inspections. Under your watch, the company did not properly record entries on its financial statements. There's no question that that conduct alleged in the same allegations would give rise to a covered claim. The fact that now the DeMarcos are sued effectively in two capacities, as sellers of the stock and as managers of the company, doesn't defeat coverage for those allegations that involve their alleged mismanagement of the company. Were the DeMarcos named insurers or was it the company? The company is the only name insured, but by operation, of course, of the policy clause, I think it's Roman 2 in the CGL form, the policy coverage under the standard ISO form extends to executive officers with respect to their duties as your executive officers. There was no issue in the case that the DeMarcos were executive officers. I'm curious whether selling off their shares of stock was within the scope of their duties as executive officers. Actually, there's another clause in there that says that there's coverage for shareholders as well with respect to their liability as shareholders, but that is not the insured status that is pertinent here because the conduct of greater alarm under the DeMarcos watch is with respect to their duties as executive officers. It just also happens that DeMarcos were sellers of stock along with other people, by the way, who were not sued. The other sellers of the stock were not sued by Interface, only the DeMarcos who also were managers of the company. The fact that Interface is alleging is taking operational conduct and couching that in misrepresentation language does not defeat the potential for liability for the operational conduct. One may question the viability of that theory, but we also have to remember, I think, an important fact that this is an arbitration tribunal, and in arbitration, as we all know, the panel, in this case a AAA panel, does not have to apply dry law, as the California Supreme Court put it, and can apply whatever notions of justice it sees fit under the circumstances. So especially in a fluid situation like an arbitration where that type of conduct is being alleged, there is potential for coverage under straightforward principles of California law. Thank you very much, counsel. May it please the Court, and good morning. Stephen Rice for the Appellee Everest Indemnity Insurance Company. The touchstone of this case, and I don't think there's any dispute about this between the parties, is the arbitration demand itself. And I'd like to answer the Court's questions that were posed to appellants' counsel by referencing the arbitration demand itself. The demand makes it very clear what the case is about. In paragraph 11 of the arbitration demand, it's stated that all claims to cert herein arise out of or are related to the agreement, the stock purchase agreement, or the breach thereof. In the opening three paragraphs of the arbitration demand. Well, the duty to defend is to be construed quite liberally. And isn't there some ambiguity in the arbitration demand where Interface alleges that it sustained damages from having to complete unfinished fire alarm inspections, quote, at its own cost, because the demarcos never performed such work? Doesn't that relate to greater alarms operations? There's no question that there are many operational allegations in the arbitration demand. But that's not the gravamen of the allegations. Well, I guess if it created ambiguity as to the gravamen of the operation, then wouldn't that entitle appellants to be defended? You're correct, Your Honor. I'm playing both sides here, so we want it to be as hard for you as it was for the appellant. I appreciate that, and that's perfectly appropriate. If there was an ambiguity, the ambiguity is under California law interpreted in favor of the policyholder. That's boilerplate California law. But here there is no ambiguity. And Gray v. Zurich also instructs that the duty to defend is limited by the nature and kind of the risk covered by the policy. All right. So if I understand your argument, then the paragraphs that talk about these things that the appellant is mentioning would be something that you would have a duty to defend. They have to be interpreted in terms of the, you know, the overall language, and the overall language is this is a stock purchase agreements lawsuit. That's correct. There's no ambiguity in the arbitration demand itself. All of the allegations that Your Honor is referring to and that counsel referenced in his argument are found within a section of the arbitration demand entitled misrepresentations. And the arbitration goes, demand goes through those misrepresentations, including misrepresentations about the failure to perform inspections, about credit card purchases, about financial statements, and a whole host of other issues. But the allegation is that the Marcos, in their capacity as shareholders, misrepresented those facts to interface during the course of the stock purchase transaction. And the damages, the policy is also quite clear that the damages must flow from the act error mission to which this insurance applies. And in the arbitration demand, it's quite clear, and this is repeated in each of the claims, every single one of them, as a proximate result that the fraudulent, false, misleading and deceptive practices of the DeMarcos interface suffered damages. That's the nature of this case. It's the case. But don't we err in focusing on the theory of liability pled in the arbitration demand, because as I understand California law, and believe me, I'm no expert, I think that what is important is whether the facts that are disclosed give rise to a potential claim. Not that that's what's pled, but that within the facts that are set forth, there could be a claim. There could be a claim by the purchasers based upon the failure to perform these fire inspections or not to monitor properly or to bill for things that have yet to be installed. They could have brought such a claim. And if they had, they clearly would have been entitled to the, that is, the DeMarcos clearly would have been entitled to coverage. You're correct, Judge Sedgwick, that the standard is potential for coverage. But here there's no potential for coverage. Why is there no potential for coverage? Because there are, the claims that interface asserted did not, the facts, let's set aside the claims. The facts. Focus on the facts and tell me why there isn't a potential claim against the DeMarcos based upon their failure to perform the inspections, their billing for things they hadn't done. Why couldn't interface sue them for that? There are a couple of ways of looking at that. And one way of answering your question is that there was no operational relationship between interfacing greater alarms. So it's inherently impossible for an operational fact to be alleged between these parties. This is a transaction. These facts. Wait. Why would it be impossible? Didn't interface wind up owning the company? Yes. Greater alarm became a subsidiary of interface. Correct. And this concerns the transaction by which that happened. That is not an operational event. And so the facts that occurred in making that ownership transfer, that subsidiary transaction occurred, are non-operational facts. And that's all that's alleged in the, in the, this arbitration demand. I know that's what's alleged, but why in theory couldn't interface have sued the DeMarcos for having exposed them to the cost of installing systems that had been billed for but not installed? California law is also quite clear of the Gunderson decision, which is cited in the brief and numerous others, that you don't speculate about claims that could have been brought. What you look for is the potential for coverage in the claims and facts that have been brought.  No. You look at, the California law requires the court to look at the facts, the claims, and the damages. And the policy language requires that, too. The facts are the most important, though, because you can't evade coverage. And this is clearly correct. You can't, a carrier, such as my client, can't avoid coverage by artificially relying upon the labels that the underlying plaintiff chooses to give to the claims. But that's not what Everest did here. And that's not the analysis that we've gone through. We're looking at the facts. Could they have sued the DeMarcos for a claim for, say, indemnification or damages for having to complete the work that the company had not completed at the time of the acquisition? I don't know how they could outside the context of the stock purchase agreement. The only way that Interface would have that kind of liability is if it is through the stock purchase transaction. And that's what's alleged here in this action. Whether there might be some other theory out there that was not asserted, we can't deal with that. We have to deal with the facts that are alleged. And why is the stock purchase not included in the operations? I heard your opposing counsel make an argument that selling the shares is also part of the operations. It's not excluded from the operations. Right. The answer to that question is that the errors and admissions endorsement that's at issue here defines the coverage as acts, errors, or missions that occur in the conduct of the named insured's operations as defined in the policy application and the declarations page for the policy. The application for the – so it's a very limited set of defined operations. The application is in the record. There's no mention of the stock ownership of the company, the financing of the company, the percentage ownership. None of that is in the application. What is in the application are a series of operations that the company does, the installation of alarm systems and so forth. That's what was listed there. And that's what Everest underwrote. That's the risk that Everest agreed to assume. Let me see if I understand you on one point. I think in your papers there's some suggestion that because there's an explicit list of things on the application, that the things mentioned in the arbitration demand actually wouldn't be covered anyway because they're not identified explicitly on the list. But I don't – it seems to me that the things in the arbitration demand, the facts, not the theory behind the claim, but the facts clearly fall within the coverage for errors and omissions. And I think you admitted as much when you first began speaking, did you not? What I acknowledge, Your Honor, is, and our brief says this, and we said it below, too, and Judge Carter analyzed it quite carefully in his opinion below, is that the subject matter of the misrepresentations, some of the misrepresentations are operational matters. Yes, that is the case. That's not important. And that doesn't implicate concurrent cause either. There are not two independent concurrent causes here. There's only one cause that's alleged or that could cause these damages, and that's the fact that Interface was lied to. That's what caused their damage. Had they not been lied to, the other facts were incapable of causing them damage because there was no other relationship between the parties. So there – this is not a concurrent cause case in the cartridge. You're saying Everest's – no, I'm sorry, not Everest. The company, Greater Alarm, their customers could have sued them pre-acquisition, but couldn't they have sued your client post-acquisition? Customers perhaps could have sued Interface. Is this your question, Judge Warnell? Right. Post-acquisition for things that had happened in the operations. Perhaps. That didn't – that hasn't happened, at least as far as this record discloses. This is about the damages that Interface suffered in paying too much for the stock because it wasn't told certain very important things that it later learned. And that's why there's no coverage. That's why it's non-operational, and that's why it's not covered. The DeMarco stretched the policy language too far. You don't speculate about claims that weren't brought, about arguments that could be made. You take the claim, and Graber's Zurich is quite clear on this and moving ahead. Our argument is not an outlier in California law. There are many, many cases from this California Supreme Court down that accept the denial of duty to defend. One in particular case that I would direct the Court to, and then I'll close, is the Waller case in which the Supreme Court recognized that you look to the gravamen of the action, and you do not find a duty to defend where the damages sought are directly related to or derivative of and inseparable from uncovered conduct. And that's what we have here. All right. Thank you, counsel. Thank you. Your opposing counsel went over a minute, so I'll give you a minute to respond. 44 years ago in Graber's Zurich, the California Supreme Court was very clear. The third-party claimant is not the arbiter of coverage. And we do not look at legal theories of liability or the causes of action asserted by the third-party claimant. You look at the facts alleged in a complaint to determine whether a duty to defend is owed. I suggest that the thrust of the appellee's position runs counter to this Supreme Court's seminal decision. Counsel argues that the damages alleged must flow from a covered act error omission. Indeed, they do. The policy requires only because of. That is, the claim must be asserted, there must be a request for compensatory damages because of an act error omission in the operation of the company's operations. Absent the act, and absent an act error omission in the operation of the company, there would be no claim in this case. That act error omission or alleged act error omission is a necessary condition for the third-party claimant's theory or claim of damage. Thank you, Your Honor. Thank you. Thank you both for a very helpful argument. DeMarco v. Everest Indemnity will be submitted. And we will take up Revolorio Crispin v. Holder.
judges: Sedwick, Wardlaw, Callahan